(63 App. Div. 581.)

PEOPLE ex rel. BLACKBURN et al. v. BARTON et al., Tax Assessors.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. TAXATION—EXEMPTION—CHARITABLE AND BENEVOLENT PURPOSES—USE OF LAND.

Under Gen. Laws, c. 4, § 4, subd. 7 (Tax Law), providing that the real property of an association organized exclusively for charitable purposes, and used exclusively for carrying out such purpose, shall be exempt from taxation, but that real estate of such a corporation, used for other purposes, shall not be exempt,—land owned by a religious society, and used

for purposes of farming and pasturage, the proceeds being devoted to the support of a charitable school, is exempt, but land contiguous thereto, not used at all, or only as wood land, from which fuel is obtained for the use of the school, is subject to taxation.

2. SAME—SOCIETY ORGANIZED FOR CHARITABLE PURPOSES—RELIGIOUS SOCIETY OF FRIENDS.

     Under Gen. Laws, c. 4, § 4, subd. 7, providing that the real property of an association organized exclusively for charitable, benevolent, or missionary purposes shall, in certain instances, be exempt from taxation, the religious Society of Friends, though not incorporated, is an association organized for religious purposes, within the statute, so as to be entitled to the exemption.

Appeal from special term, Cattaraugus county.

Certiorari by the people, on the relation of Thomas Blackburn and another, against Edgar A. Barton and others, as tax assessors. From a final order vacating an assessment, respondents appeal. Modified.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

George W. Cole, for appellant.

J. V. Goodwill, for respondents.

RUMSEY, J. The premises consist of 467 acres of land in the town of Elko, in the county of Cattaraugus. The relator is an association existing in Pennsylvania, which many years ago established in what is now the town of Elko a school for the education of the Indians residing on the Allegheny, Cattaraugus, and Cornplanter reservations. The buildings connected with the institution are a large building, where the teachers and the students live; another building, in which are the school rooms, and which is also used for living purposes; a large barn, and the usual outbuildings connected with a farm. The institution is in charge of a superintendent, employed at a salary. There are also other employés at stated salaries, but no one except those employed in the business of the school receives any compensation. The average number of pupils is 25 girls and 20 boys, who live at the school, and are furnished their board, lodging, and education, but who supply their own clothes. They are required to work about the place to some extent. There are 80 acres of plow and meadow land, upon which crops are raised. A certain number of acres have been cleared, and are used for pasturage. Upon the place is a dairy, with from 8 to 12 cows, and stock is raised upon and sold from the place from time to time. Everything sold from the place is used simply to meet the expenses of carrying on the school work, leaving a deficit each year of about $2,500, which is raised by voluntary subscriptions. The 80 acres of plow and meadow land and the pasture land are more than sufficient to raise all that is required for the purposes of the school, and the surplus is sold, and, with the proceeds of the stock sold, has been devoted to school uses. About 50 acres is called the "wood pasture," where it has been customary to cut wood for the sole use of the institution; and cattle also are pastured there. Seventy-five acres are grown up with trees and brush, and in their present state are

not suitable for use for any purpose. The remaining land is not cleared, but is covered with different kinds of timber. It is put to no use, but lies idle, and neither the land nor its proceeds are devoted to the needs of the school. It is worth about $6,000. The whole property is worth about $15,000, but was assessed at $8,000, which is the ordinary proportion to the actual value at which farm lands are assessed in that town. The exemption from taxation is claimed under subdivision 7 of section 4 of chapter 908 of the Laws of 1896, being chapter 4 of the General Laws, and known as the "Tax Law." That section, so far as it applies to this case, provides:

"That the real property of an association organized exclusively for charitable, benevolent or missionary purposes, and used exclusively for carrying out thereupon one or more of such purposes, shall be exempt from taxation. The real estate of any such corporation not so used exclusively for carrying out one or more of such purposes but leased or otherwise used for other purposes, shall not be exempt; but if a portion only of any lot or building of any such corporation or association is used exclusively for carrying out thereupon one or more such purposes of any such corporation, then such lot or building shall be exempt only to the extent of the value of the portion so used, and the remaining or other portion to the extent of the value of such remaining or other portion, shall be subject to taxation."

The assessors of the town of Elko assessed the whole property. The relators claim that it was all exempt under the provisions of the statute. The assessors refused to allow the exemption. This writ of certiorari was sued out. Evidence was taken before a referee, who reported the facts, and held that the whole property was exempt. That report was confirmed by the special term, and an order was made striking the assessment from the rolls. From that order this appeal is taken.

In examining the question, we must consider that the laws which exempt property from taxation are to be strictly construed. Seminary v. Cramer, 26 Hun, 309; Cooley, Tax'n, 146. Therefore, before the relator can secure the benefit of the exemption, it is necessary that it should bring itself clearly within the provisions of the statute. In determining whether property is used for the purposes of an institution of this kind, so as to exempt it from taxation, it must be made to appear that the use is necessary or fairly incidental to the maintenance of the institution for the carrying out of the purposes for which it was organized. It is not necessary that every particle of the real estate should be devoted to the location of the buildings and the laying out of the grounds of the institution, but, so far as the land is used for the raising of supplies for the inmates, to that extent the institution may claim exemption from taxation. Such appears to be the conclusion reached in the case of People v. Barber, 42 Hun, 27. In that case the college buildings were situated upon a farm used for supplying vegetables, grain, butter, and pork for the teachers and students; and it was held that, because the farm was devoted to these purposes, and for the express benefit of the institution, it was entitled to claim exemption. While that case was not decided under the present statute, it may be properly referred to, I think, to illustrate the extent to which the exemption will be permitted to go. The case of People v. Sayles, 32 App. Div. 197,

53 N. Y. Supp. 67, was decided under this statute. In that case the Young Men's Association was a library association. It had erected a large building, a small portion of which was used for the library, and it had rented the rest for purposes not necessarily connected with the library, but the income of which was devoted exclusively to the use of the library; but it was held that so much of the property as was leased for the other purposes was taxable, although the net income was entirely expended upon the library. The case was affirmed by the court of appeals in 157 N. Y. 677, 51 N. E. 1093. It is authority for the proposition that this statute must be strictly construed against the property holder, and that, if the exemption is not expressed, it cannot be allowed.

Upon the facts in this case, and within the rule laid down in the case of People v. Barber, 42 Hun, 27, it may fairly be said, without any undue extension of the rule, that so much of the land of the relator as is actually used for farm purposes, including the raising of grain and vegetables for the use of the inmates and the raising of stock for the same purposes, is exempt from taxation; but that the remainder of the property cannot fairly be said to come within the exemption of the statute. The statute says that, if a portion only of the real property is used exclusively for carrying out such purposes, then it shall be exempt only to the extent of the value of the portion so used, and the remaining portion shall be taxed. It is quite clear, upon the facts shown here, that the only portion of the property which is actually used for the purposes of the institution is the 80 acres of plow and meadow land, and the land upon which the stock is pastured. The remainder is not used at all, except, perhaps, the 50 acres from which wood is cut; and it clearly does not come within the exemption of the statute, and is subject to taxation. The actual value of the land not used is $6,000. That is not the amount at which it should be assessed. The value of the whole property is $15,000, and it is assessed at $8,000. The part which is not used, worth $6,000, should be assessed at the proportionate value which $15,000 bears to $8,000,—that is, the unused portion should be assessed at $3,200; and to that extent the order should be modified by reducing the assessment to represent the value of the property which is not used at present for the purposes of the institution; and, that portion of the property being worth $6,000, it should be assessed in the proportion in which the whole was assessed,—that is, $3,200.

Another question, however, is raised, and that is that the Society of Friends does not come within the purview of the statute. It is found by the referee that the society is not a corporation. There may be some doubt whether that is correct. It appears that by chapter 723, §§ 92, 93, Laws 1895 (being the Religious Corporations Law), the religious Society of Friends is recognized as an association, and certain rights are granted to it; among others, the right to hold property, and to dispose of it. To create a corporation, no precise words are necessary; but whenever the legislature, by statute, recognizes a body of people as an association, and gives to that body corporate rights, then it becomes a corporation under the name by which it was recognized by the legislature by virtue of the mere fact

that it has been recognized as such. Mor. Priv. Corp. §§ 18–20. But, without insisting upon this rule, there is no doubt that under the statute quoted above the Society of Friends is recognized as an association organized for religious purposes, and the case shows that it was actually organized for charitable purposes, and it is within the provisions of the statute giving it exemption.

The final order should be modified by providing that the assessment against the relator should be established at $3,200, and, as so modified, the order should be affirmed, without costs to either party in this court. All concur.